IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOANA DESHIELD, )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>v. )<br>)<br>SDH EDUCATION EAST, LLC, )<br>d/b/a SODEXO, INC., )<br>)<br>Defendant. ) | 1:12CV230 |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry 16.) Plaintiff Joana Deshield opposes the motion. (Docket Entry 19.) For the following reasons, it will be recommended that the Court grant Defendant's motion for summary judgment.

## I. PROCEDURAL BACKGROUND

On February 7, 2012, Plaintiff filed this action against Defendant, SDH Education East, d/b/a Sodexo, Inc. ("SDH") in Guilford County Superior Court. The action was removed to this court on March 7, 2012. (Docket Entry 1). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"). (Docket Entry 2.) On January 16, 2013, Defendant SDH filed the instant motion for summary judgment.

## II. FACTUAL BACKGROUND

On a motion for summary judgment, this court views the evidence in the light most favorable to Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Plaintiff is a native of Liberia, West Africa. (Def. Mot. for Summ. J., Ex. 1, Deposition of Joana DeShield at 12, Docket Entry 16-1(hereinafter "Pl. Dep.").) Defendant SDH operates all food service outlets on the campus of North Carolina A & T University ("A & T") in Greensboro, North Carolina. (*Id.*, Ex. 3, Decl. of Todd Meiners ¶ 3, Docket Entry 16-4.) SDH's A & T food service operation employs banquet servers for its catering functions. (*Id.*) Banquet servers set up for, serve during, and clean up after catered events. (Pl. Dep. at 63-64.) SDH employs both full-time and part-time banquet servers. (Meiners Decl. ¶ 3.) According to Meiners, banquet servers are assigned on an as-needed basis depending upon the number and size of SDH catered events, and a banquet server's hours of work can vary widely. (*Id.*) SDH has many small catering events which require only one or two banquet servers, and all banquet servers, on occasion, may be assigned to work catering events by themselves. (*Id.* ¶ 4.)

In September 2007, Plaintiff applied to work for SDH. (Pl. Dep. at 17-18, Ex. 1, Docket Entry 16-2.) She indicated on her application that she was seeking a part-time position on the second shift because she was a student and attended classes during the day. (*Id.* at 19, 61-62; Ex. 1.) Plaintiff was hired and began work as a part-time banquet server on September 26, 2007, reporting to catering manager Jose Cabrera. (*Id.* at 67.) Plaintiff's hours of work varied. (*Id.* at 62-63.) At the time of her hiring, Harvey Holmes was the

general manager for SDH's A & T account. Holmes was replaced on November 30, 2009, by Todd Meiners. (Meiners Decl. ¶ 2.) Steve Dyer was the interim operations manager for SDH at all times relevant to the facts of this case. (Def. Mot. for Summ. J., Ex. 4, Decl. of Steve Dyer, ¶ 1.)

According to Plaintiff, there were at least three other SDH employees who were of African national origin. (Pl. Dep. at 190-91.) Additionally, Plaintiff testified that almost all of her SDH co-workers and supervisors were African-American. (*Id.* at 68-75.)

On April 2, 2009, Plaintiff received a written warning for allowing a co-worker to take ten to twelve pounds of cut fruit from the premises of a catered event. (Pl. Dep. at 135; *see also* Ex. 12, Docket Entry 16-3.) In her deposition, Plaintiff acknowledged that SDH policy prohibited employees from taking food left over from a catered event off the premises and that it was her responsibility to properly dispose of the fruit in accord with company policy. (Pl. Dep. at 140.) The written warning expressly provided that Plaintiff was subject to termination for any further failure to "maintain satisfactory performance or conduct." (Ex. 12.) The warning contains a handwritten notation indicating that Plaintiff refused to sign or acknowledge the warning. (*Id.*)

On January 29, 2010, SDH terminated Plaintiff's employment due to "poor job performance." (Dyer Decl. ¶ 4, Ex. A.) The termination notice identified three instances of "unsatisfactory performance or conduct:"

- Joana was scheduled for 10:00am on 1/28/10 – she reported to work at 10:15am without notifying her manager that she would be late.
- Joana was assigned to do a catering event for Murphy Hall which was to be set by 10:30am; all prep work had been done the previous day; Joana was late with the event; when the Operations and Interim Catering Manager arrived to the event, Joana was not in her assigned location.

3

- Joana was scheduled for 8:00am on 1/29/10 – she reported to work at 8:30am without notifying her manager that she would be late.

(*Id.*) Dyer met with Plaintiff and informed her of her termination. (Pl. Dep. at 147.) Plaintiff did not sign the termination notice. (Dyer Decl., Ex. A.)

In her deposition, Plaintiff disputed that she was late to work on January 28, 2010, testifying that her card used to clock-in was not working properly. (Pl. Dep. 147-50.) She did not indicate that she reported the malfunctioning swipe card to Dyer. She also disputed the other reasons given for her termination, though she offered nothing more than her testimony to support her contentions.

On March 5, 2010, Plaintiff filed a charge of discrimination with the EEOC. (Pl. Dep., Ex. 14, Docket Entry 16-3.) On November 10, 2011, the EEOC issued a Dismissal and Notice of Rights finding no Title VII violation.

Plaintiff alleges that she was subjected to a hostile work environment based on her national origin. She alleges that other employees referred to her as "smoke, Black a lot, and other derogatory names associated with her color or her complexion and African birth." (Compl. ¶ 5.) In her deposition, Plaintiff testified that LaTasha McCorkle, a dark-skinned African-American, told Plaintiff that she was "black like smoke." (Pl. Dep. 89-90.) Plaintiff also testified that on other occasions McCorkle referred to her as "black a lot." (*Id.* at 84.) Plaintiff did not know what "black a lot" meant. (*Id.* at 84-85.) On another occasion, according to Plaintiff, someone wrote "Black a lot Inc." next to Plaintiff's name on the work schedule. (*Id.* at 85, Ex. 10.) Plaintiff did not know who wrote those words on the schedule. (*Id.* at 87-88.) Plaintiff testified that her American co-workers were not subjected to the

4

same name-calling. (*Id.* at 84-90.) She testified that the allegations and the harassment she experienced caused her stress and other health problems. (*Id.* at 168-174.)

Plaintiff also alleges that another co-worker, Christopher Hand, coughed or spit on her. (*Id.* at 104-08.) She called 911 during this incident. (*Id.* at 108.)

Plaintiff alleges that she was "denied the same opportunities for full-time hours comparable to her American born peers." (Compl. ¶ 6.) Plaintiff admitted that she applied for a part-time position initially but that she later wanted to be working full-time hours. (*Id.* at 118; 121-23.) When she asked Meiners about getting additional hours, he explained to her that the hours worked by each employee was dependent on the number of catered events and that he could not give her more hours unless the work demand required it. (Meiners Decl. ¶ 3.)

Plaintiff further alleges that she was denied increases in her pay in retaliation for her complaints about national origin discrimination in the workplace." (Compl. ¶ 7.) She contends that "American-born co-workers" received pay raises. (*Id.*) In her deposition, Plaintiff testified that various co-workers, including "Casey, Tolisha and Chris Hand" received raises, though these allegations were based on hearsay and Plaintiff offered no other proof of the alleged raises. Meiners stated in his declaration, however, that SDH did not provide raises to its A & T food service employees in 2009 because the University was not providing raises to its employees. (Meiners Decl. ¶ 6.) According to Meiners, no raises were given except in cases "of promotion or increased responsibilities." (*Id.*)

Plaintiff also alleges that she was "subjected to greater scrutiny than her American born co-workers." (Compl. ¶¶ 4, 6.) In her deposition, Plaintiff testified that Dyer, the

5

interim operations manager, seemed to be taking "notes" at various times. (Pl. Dep. at 164-65.)

On November 6, 2009, Plaintiff placed a call to SDH's Ethics and Compliance Hotline, also known as "the Network." (Pl. Dep. at 90-91; Ex. 11; Decl. of Elaine Stewart, ¶ 2.) Plaintiff made general complaints of discrimination and mistreatment, including the incidents recounted above, such as her complaint that the phrase "Black a lot Inc" was written on the schedule and the claim that Chris Hand had coughed or spit on her. Plaintiff also claimed that she was being required to work full-time hours despite being a part-time employee and that she had been assigned to work by herself on several occasions.

Elaine Stewart, a Human Resources Director for Defendant, traveled to A & T to investigate Plaintiff's complaints. Stewart discussed all of the complaints with Plaintiff but Plaintiff did not tell Stewart that she was being discriminated against because of her national origin. Plaintiff discussed with Stewart the incident where "Black a lot Inc." was written on the schedule, but she said she did not know what it meant or who had written the phrase. (Stewart Decl. ¶ 3.) Plaintiff also recounted the incident involving Christopher Hand. Stewart discussed the matter with Jose Cabrera, the Director of Catering, who witnessed the incident. Cabrera explained that Hand had coughed while across the room from Plaintiff and that Cabrera did not believe that "any residue from the cough could have flown across the room and landed on [Plaintiff's] sweater." (Stewart Decl., Attach. A, Hotline Report at 1, Docket Entry 16-6.) Stewart concluded it was not an incident of intentional spitting. (Stewart Decl. ¶ 3.)

6

Stewart also discussed with Plaintiff the allegations that she was "left alone to work" and that she was required to work full-time hours even though she was considered a part-time employee. Stewart reviewed the work schedules for the department and concluded from the schedules that Plaintiff was not being treated differently than any other employees with respect to allocation of work assignments or number of hours worked. (*Id.* ¶ 4.) Stewart prepared a written report in which she found no evidence of discriminatory conduct toward Plaintiff in the workplace. (*Id.* ¶ 5.) In her report, Stewart documented her investigation and noted several issues that Cabrera and others had with Plaintiff, primarily to do with her "confrontational" nature and her "critical and assertive" behavior toward everyone. (Stewart Decl., Attach. A, Docket Entry 16-6.)

After completing her investigation, Stewart met with Plaintiff and explained her findings and conclusions. (*Id.*) Stewart told Plaintiff that she should call if she experienced any other issues. (Pl. Dep. 117-18; Stewart Decl. ¶ 5.) Plaintiff never contacted Stewart again. (Pl. Dep. at 133.) In her deposition, Plaintiff testified that she was pleased with the way Stewart handled the investigation, calling Stewart "a wonderful woman." (*Id.*)

### III. DISCUSSION

A. <u>Standard of Review</u>

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716,

718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* The non-movant's proof must meet the substantive evidentiary standard of proof that would apply at a trial on the merits. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993), modified on other grounds, *Stokes v. Westinghouse Savannah River Co.*, 420, 429-30 (4th Cir. 2000); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989). Unsupported hearsay evidence is

8

insufficient to overcome a motion for summary judgment. *Evans v. Techs. Applicationss & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its terms. As the *Reeves* court noted:

> Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148. In *Dennis*, a case decided after *Reeves*, the Court of Appeals for the Fourth Circuit noted that the *Reeves* court "instructs more broadly that factors on which the appropriateness of a judgment as a matter of law will depend in any case will include 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Dennis*, 290 F.3d at 649 (quoting *Reeves*, 530 U.S. at 148-49).

9

B. Analysis

A liberal reading of the complaint shows that Plaintiff has alleged claims for discriminatory termination and hostile work environment based on her national origin. Plaintiff also arguably alleges a claim for discriminatory retaliation. Defendant argues that Plaintiff has failed to establish her *prima facie* case of discrimination as to all claims and that summary judgment is proper because there is no genuine issue of material fact.

1. Title VII

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensations, terms, conditions, or privileges of employment, because of such individual's race, color, religions, sex, or national origin . . . ." 42 U.S.C § 2000e-2(a)(1). Absent direct evidence of intentional discrimination, Title VII claims are analyzed under the burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case of discriminatory discharge under Title VII, Plaintiff must show (1) that she is a member of a protected class; (2) that she suffered from an adverse employment action; (3) that at the time her employer took the adverse employment action she was performing at a level that met her employer's legitimate expectations; and (4) that the position remained open to or was filled by a similarly qualified applicant outside the protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999)).

Title VII also prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge . . . or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to "articulate a legitimate, non-discriminatory reason for its actions towards the employee." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017-18 (4th Cir. 1996). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show that the defendant's proffered reason is merely pretextual and "that the employer's conduct towards [him] was actually motivated by illegal considerations." *Id.* at 1018. Even with the burden shifting, the ultimate burden of persuasion lies with the plaintiff. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).

2. <u>Plaintiff's Claims based on National Origin</u>

a. <u>Discriminatory Discharge</u>

Defendant contends Plaintiff cannot make out a *prima facie* case of discriminatory discharge because she cannot show that she met SDH's "legitimate expectations," the third factor in the *prima facie* analysis. *King*, 328 F.3d at 149. As pointed out by Defendant, the

11

record shows that at the time Plaintiff was terminated she had an active final warning in her file for the left-over fruit incident in April 2009 and had further violations for being late to work or not being where she was supposed to be. (Meiners Decl. ¶ 7.) Defendant submitted the termination notice which sets forth the specific violations giving rise to Plaintiff's termination. (Pl. Dep., Ex. 15.) Additionally, Plaintiff's supervisor had just completed an annual evaluation of Plaintiff that rated her performance as unacceptable. (Meiners Decl. ¶ 7.)

Plaintiff asserts in her brief that she was not late to work on January 28, 2010, and that "to the best of her knowledge, there were no deficiencies in performance of the event for the customers." (Pl. Mem. in Opp'n to Mot. for Summ. J. at 3.) However, the critical flaw in Plaintiff's argument that she was performing her job up to SDH's expectations is that Plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [Plaintiff] was meeting [Defendant's] expectations." *King*, 328 F.3d at 149 (internal citation omitted). In other words, Plaintiff's perception of her job performance is not relevant. Rather, [i]t is the perception of the decision maker which is relevant." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). There is documented evidence in the record of Plaintiff's unsatisfactory job performance. As such, Plaintiff's conclusory statements about her own job performance are not sufficient to create a genuine issue of material fact. Plaintiff, therefore, has failed to establish the third element of the *prima facie* case for her discriminatory discharge claim.

For the same reasons, even if she could satisfy these elements, Plaintiff cannot demonstrate pretext under the *McDonnell Douglas* standards. Plaintiff disputes that she was late for work on one of the dates noted in her termination notice, but other than her

12

conclusory statement, she has offered no competent evidence that the reasons given in the notice were false. There are no facts in the record suggesting that the supervisors who made the decision to terminate Plaintiff did not legitimately, and in good faith, believe that Plaintiff had engaged in unacceptable behavior as documented in the termination notice. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 220 (4th Cir. 2007) ("Whether [Plaintiff] actually [made physical threats to his employer] is irrelevant in this context because . . . the decisionmaker believed that he did. Title VII endeavors to eliminate workplace discrimination, but the statute was not designed to strip employers of discretion when making legitimate, necessary personnel decisions. . .") Plaintiff has not established that SDH's nondiscriminatory reasons for terminating her are a pretext for discrimination.

Plaintiff's wrongful discharge claim under North Carolina law fails as well. Plaintiff alleges that the conduct of Defendant violates the public policy of North Carolina. *See* N.C. Gen. Stat. § 143-422.1 to -422.3. The same standards applicable to Plaintiff's federal claims govern the resolution of her state-law claim so long as they do conflict with North Carolina statutes and caselaw. *See N.C. Dep't of Corr. v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983); *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995); *Jones v. Southcorr L.L.C.*, 324 F. Supp. 2d 765, 782-83 (M.D.N.C. 2004). Thus, it follows that if Plaintiff's federal claims fail, her state law claim for wrongful termination necessarily fails as well. *Id.*

  b. Retaliation Claim

Plaintiff arguably states a claim for retaliation, contending that she was "placed under greater scrutiny than her American born coworkers," was "denied the same opportunities for full time hours comparable to her American born peers," and was "denied increases in her

13

pay in retaliation for her objections to national origin discrimination in the workplace." (Compl. ¶¶ 6, 7.) Plaintiff, however, has not established the elements of a *prima facie* case for retaliation.

Preliminarily, it is not clear that Plaintiff "engaged in a protected activity." There is simply no credible evidence in the record that Plaintiff ever made a claim of national origin discrimination to Meiners or Dyer. Plaintiff generally alleges that she complained about discrimination to Jose Cabrera and others during her employment, but there is no evidence that Meiners or Dyer, the two supervisors who made employment decisions, had knowledge of these complaints. It is well-settled that a decision-maker's knowledge that a plaintiff engaged in a protected activity "is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998), abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Moreover, while Plaintiff recounted several incidents in her meeting with Elaine Stewart, she did not complain to Stewart that she believed she was being discriminated against based on her national origin. (Stewart Decl. ¶ 3.) Plaintiff has failed to present evidence that Defendant retaliated against her because she protested national origin discrimination or otherwise engaged in protected activity under Title VII. *See Harris v. Maryland House of Correction*, 209 F. Supp. 2d 565, 570 (D. Md. 2002) (recognizing that general complaints about unfair treatment are insufficient to support a Title VII retaliation claim).

Additionally, Plaintiff has failed to demonstrate any connection between her alleged complaints and any adverse employment action.[1] Plaintiff's vague allegations that her hours were cut, that she was made to work alone, and that "American-born" workers received pay raises which she did not receive are simply unsupported in the record. Moreover, to the extent that Plaintiff alleges retaliatory discharge, there is simply no evidence to support the inference that her termination was retaliatory. Summary judgment is appropriate as to Plaintiff's retaliation claim.

c. <u>Hostile Work Environment Claim</u>

Plaintiff alleges that she has established a claim for hostile work environment based on the totality of circumstances concerning the alleged harassing comments and conduct. Defendant contends that Plaintiff cannot establish a claim for hostile work environment because Plaintiff has not shown that the alleged conduct was motivated by national origin animosity and the conduct alleged was not sufficiently severe or pervasive to create an abusive environment.

To prevail on a Title VII hostile work environment claim based on national origin, a plaintiff must present evidence establishing that (1) the subject conduct was unwelcome; (2) it was based on the national origin of the plaintiff; (3) it was sufficiently severe or pervasive

---

[1] Plaintiff's claim that she was subjected to greater scrutiny than her American-born co-workers does not constitute an adverse employment action under Title VII. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Weaks v. North Carolina Dept. of Transp.*, 761 F. Supp. 2d 289, 308 (M.D.N.C. 2011) ("An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits' of the plaintiff's employment" and typically involves "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.") Moreover, Plaintiff produced no evidence that she was subjected to extra scrutiny. In her deposition, Plaintiff mentioned that one of the supervisors, Dyer, was taking notes when he was around her. This evidence simply does not rise to the level of evidence required to show discriminatory retaliation under Title VII.

to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer. *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc); *Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126 (4th Cir. 1995). To establish a hostile work environment claim, a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21.

The court assumes that the conduct of which Plaintiff complains was unwelcome, thus satisfying the first prong of the prima facie case. Plaintiff, however, has not set forth any evidence to show that the derogatory names which she was allegedly called were motivated by or based on her Liberian national origin. As noted by the United States Supreme Court, "[t]he term 'national origin' on its face refers to the country where a person was born, or more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). "[R]ace and national origin are ideologically distinct under Title VII." *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996). "To establish a hostile environment claim, [plaintiff] must show that 'but for' his [national origin], he would not have been the victim of the alleged discrimination. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

16

Plaintiff has alleged that an African-American co-worker, LaTasha McCorkle, called her "black a lot" and told Plaintiff that she was "black like smoke." Additionally, Plaintiff alleges that an unknown person wrote "Black a Lot Inc" next to Plaintiff's name on the work schedule on one occasion. These statements do not indicate a particular bias against persons of Liberian descent. Plaintiff testified that the "smoke" was in reference to her dark complexion, which does not necessarily refer to her national origin. Moreover, Plaintiff testified that she did not understand what "Black a Lot Inc" meant, nor does she explain how the statement implicates her national origin. Plaintiff likewise has not shown that the incident in which Plaintiff's co-worker allegedly spit on her, even if true, was connected to her Liberian national origin. A plaintiff's mere speculation as to discriminatory animus is not sufficient to prove that that she faced unwelcome conduct on the basis of national origin; concrete evidence is required. *See, e.g., Nicole v. Grafton Sch., Inc.*, 181 F. Supp. 2d 475, 482-93 (D. Md. 2002) (a plaintiff must bring forth more than "merely conclusory allegations" to establish a *prima facie* case of discrimination). Here, Plaintiff has offered no such concrete evidence. As such, Plaintiff's claim fails.

Moreover, even if the alleged conduct of Plaintiff's co-workers was shown to be related to her national origin, Plaintiff has not met her burden of proving that the workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (internal quotation and citation omitted). To determine whether the harassment was pervasive enough to render the work environment objectively abusive, a court must look at all the surrounding circumstances, including "(1)

17

the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000). Plaintiff's allegations simply do not rise to this level.

Plaintiff's evidence identifies isolated comments by one specific co-worker, McCorkle. While Plaintiff might view these comments as offensive, they also can be viewed as fairly ambiguous. "[S]imple teasing , . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The scant, and scattered, details offered by Plaintiff as to these comments and other alleged comments by unnamed co-workers suggest that the comments were not severe or humiliating enough to amount to more than mere offensive utterances. *Harris*, 510 U.S. at 23. Neither does the record show that the comments were so frequent as to be pervasive, or that the comments themselves were threatening. After considering all the evidence, this court finds that the harassing incidents alleged by Plaintiff, taken individually or as a whole, are not objectively severe or pervasive enough to alter the conditions of her employment.

The evidence offered by Plaintiff pales in comparison to the evidence presented in cases where hostile work environment claims have survived summary judgment. *See, e.g.*, *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176-77 (4th Cir. 2009) (concluding that a reasonable jurist could find that the race-based harassment was objectively severe or pervasive where three of plaintiff's co-workers used the word "n****r," and at least one of them used the word "pretty much every day;" another co-worker called plaintiff a "black

18

stupid n****r" among other similar offensive names; and two other co-workers kept blue colored mop-head dolls in their offices and had the dolls hanging from nooses which were tied around the dolls' necks); *Spriggs v. Diamond Auto Glass*, , 242 F.3d 179, 182-84 (4th Cir. 2001) (same, where plaintiff was exposed daily to similar remarks directed at her from a supervisor, and where plaintiff complained several times to his supervisors); *Etefia v. East Baltimore Community Corp.*, 2 F. Supp. 2d 751, 758-59 (D. Md. 1998) (comments made by supervisor including "Africans come over here and want to get these jobs," "Africans are inferior to African-Americans," and "look at Kunte Kinte," which continued over a period of time, found to be sufficiently pervasive to survive summary judgment). This court does not condone the comments allegedly made by Plaintiff's co-workers in this case. However, Plaintiff has not shown that the comments and behavior were sufficiently pervasive or abusive so as to create a genuine issue of material fact on the hostile work environment claim. As such, Plaintiff's claim fails.

IV. CONCLUSION

Plaintiff has failed to demonstrate a genuine issue of material fact with respect to any of her claims. Therefore, for the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 16) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

May 28, 2013
Durham, North Carolina